# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT FERRELL,                                      )
individually and for others similarly situated,      )
                                                     )
                     Plaintiff,                      )
                                                     )
v.                                                   )          Case No. 19-CV-00610-GKF-JFJ
                                                     )
SEMGROUP CORPORATION,                                )
                                                     )
                     Defendant.                      )
                                                     )
v.                                                   )
                                                     )
CYPRESS ENVIRONMENTAL                                )
MANAGEMENT-TIR, LLC,                                 )
                                                     )
                     Intervenor.                     )

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss and Compel Arbitration [Doc. 39] of defendant SemGroup Corporation; the Motion to Compel Arbitration [Doc. 64] of intervenor Cypress Environmental Management-TIR, LLC (TIR); and SemGroup's Response Joining in TIR's Motion to Compel Arbitration [Doc. 65]. For the reasons set forth below, the motions are denied.

## I.       Background and Procedural History

Plaintiff Robert Ferrell brings this case as a putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), on behalf of himself and other similarly situated employees pursuant to § 216(b) of that act. Ferrell alleges that he and putative collective members are persons currently or formerly employed by SemGroup as inspectors. Ferrell asserts that he and putative collective members worked in excess of forty (40) hours in a single workweek, but

were not paid overtime as required by the FLSA, allegedly as a result of SemGroup's misclassification of himself and collective members as independent contractors.[1]

SemGroup denies that it had an employment relationship with Ferrell.  [Doc. 38, ¶ 1].  On April 9, 2020, SemGroup filed its Motion to Dismiss and Compel Arbitration [Doc. 39] seeking to enforce an arbitration provision included in the June 1, 2016 Employment Agreement executed by TIR, as "Employer," and Ferrell, as "Employee" (Agreement).  [Doc 39-1, pp. 7-9].  Pursuant to the Agreement, TIR and Ferrell "mutually agree[d]" to the following relevant conditions:

1.    The Employer hereby engages the Employee and the Employee accepts the term of employment according to the terms and conditions contained in this Employment Agreement.

*** 

4.    The parties agree that any dispute, controversy or claim arising out of or related to in any way to the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma.  Arbitration shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration Association Employment Arbitration Rules and Mediation Procedures in effect at the time the arbitration is commenced. The rules are available online at adr.org/employment.  You may also call

---

[1] The court would be remiss if did not join other district courts in recognizing the wider context in which these three motions are brought:

At first blush, this lawsuit might pass as one in a wave of garden-variety, wage-and-hour disputes between workers in the oil and gas industry and the business entities they allege to be their employers.  But it doesn't take the informed reader long to get the sense that this case is only the latest skirmish in a running battle between interest groups in employment litigation, with one side looking to weaponize the sweeping effect of mandatory individual arbitration while the other side seeks to neutralize it.

*Bock v. Salt Creek Midstream LLC*, No. 19-1163-WJ-GJF, 2020 WL 3989646, at *1 (D.N.M. July 15, 2020) (report and recommendation, objections pending); *see also Becker v. Delek US Energy, Inc.*, No. 20-CV-000285, 2020 WL 4604544, at *1 (M.D. Tenn. Aug. 11, 2020) (ruling on motions to intervene).

the American Arbitration Association at 800-778-7879 if there are questions about the arbitration process.

5.    Employee and Employer expressly intend and agree that:  (a) class action, collective action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Employment Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.  Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated or heard together with claims of any other employee.  The validity and effect of this paragraph shall be determined exclusively by federal district or state district court of competent jurisdiction situated in Tulsa County, Oklahoma and not by an arbitrator.

***

9.    This Employment Agreement sets forth the entire agreement between the parties.  This agreement can only be modified in writing executed by the party against whom enforcement is sought.  Further, any prior agreements, whether oral or written, concerning the employment of the Employee are hereby merged into this written agreement.

[Doc. 39-1, pp. 7-8].

SemGroup argues that, under Oklahoma law, Ferrell should be estopped from avoiding arbitration of his FLSA claim.  Specifically, SemGroup argues that, although Ferrell does not "formally" assert a claim against SemGroup, Ferrell nevertheless "advances a claim based on substantially interdependent conduct involving SemGroup and TIR."   [Doc. 39, p. 14]. Alternatively, SemGroup argues that Ferrell's allegations "arise out of or relate to the arbitration agreement."  [*Id.* at p. 17].

The day after SemGroup filed its motion to compel arbitration, TIR filed a motion to intervene, which this court granted in a June 12, 2020 Opinion and Order.  [Doc. 63].  TIR then filed its own Motion to Compel Arbitration [Doc. 64].  Therein, TIR first argues that the arbitrability of Ferrell's FLSA claim is to be decided by an arbitrator, not this court.  [Doc. 64, pp.

8-10].   Further, whether decided by the court or an arbitrator, TIR next contends that Ferrell's

FLSA claim must be arbitrated under an estoppel theory because the Class Action Complaint

alleges interdependent misconduct by TIR and SemGroup.   [*Id.* at pp. 10-16].   SemGroup filed a

response joining TIR's motion to compel arbitration.   [Doc. 65].   In the response, SemGroup

concurs that whether Ferrell must arbitrate his FLSA claim against SemGroup constitutes a

question of arbitrability to be resolved by an arbitrator, not the court, and reiterates its assertion

that Ferrell alleges interdependent misconduct which, under Oklahoma law, entitles SemGroup to

compel arbitration.   [*Id.*].

By joining TIR's motion to compel arbitration, SemGroup raises identical issues to those

raised by TIR.   Further, SemGroup's own motion to compel raised similar arguments.   Thus, the

court considers the motions together.

## II.     Arbitrability Analysis

"The [Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*] reflects the fundamental principle that

arbitration is a matter of contract."   *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010);

*see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted)

(describing the FAA as "reflecting both a 'liberal federal policy favoring arbitration,' and the

'fundamental principle that arbitration is a matter of contract'").   As such, like all contracts,

arbitration agreements must be enforced "according to their terms," *Rent-A-Center, W., Inc.*, 561

U.S. at 67, and "a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit."   *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

"Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine

whether the parties agreed to arbitrate that dispute."   *Dish Network L.L.C. v. Ray*, 900 F.3d 1240,

1243 (10th Cir. 2018) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985)).

Generally, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Dish Network, L.L.C.,* 900 F.3d at 1243-44 (emphasis in original) (quoting *Howsam*, 537 U.S. at 83); *see also Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 530 (2019) ("This court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."). That is, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 68-69). The Tenth Circuit has joined those Circuits holding that "when contracting parties incorporate the [American Arbitration Association] rules into a broad arbitration agreement . . . such an incorporation clearly and unmistakably evinces their intent to arbitrate arbitrability." *Dish Network, L.L.C.*, 900 F.3d at 1246.

The Agreement in this case states that arbitration "shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration Association Employment Arbitration Rules and Mediation Procedures in effect at the time the arbitration is commenced." [Doc. 39-1, pp. 7-8]. Based on the Agreement's incorporation of the AAA rules, TIR and SemGroup argue that, construed in light of the *Henry Schein* decision, the plain language of the Agreement requires that an arbitrator, rather than this court, determine whether SemGroup can compel arbitration of Ferrell's FLSA claim. [Doc. 64, pp. 8-10; Doc. 65, pp. 1-2]; *see also*

*Henry Schein, Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").

However, in a recent unpublished decision, a Tenth Circuit panel distinguished *Henry Schein*, reasoning that the decision "simply assume[s] the existence of a written agreement to arbitrate a given dispute" and requiring the court to "first address the gateway question of whether *the parties* have consummated such an agreement at all."  *Campbell Invs., LLC v. Dickey's Barbecue Rests., Inc.*, 784 F. App'x 627, 630 n.3 (10th Cir. 2019) (emphasis added); *see also Puchalski v. TCFC HotelCo, LP*, No. 19-CV-00812-DBB, 2020 WL 1891885, at *2 (D. Utah Apr. 16, 2020).  This is in accord with the reasoning of other Circuits.  *See Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 n.7 (3d Cir. 2020) ("*Henry Schein* 'did not change . . . the rule that courts must first decide whether an arbitration agreement exists at all.'"); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.,* 921 F.3d 508, 515 n.4 (5th Cir. 2019) (internal citation omitted) ("*Schein* simply rejected the 'wholly groundless' exception to arbitrability delegations.  It did not change—to the contrary, it reaffirmed—the rule that courts must first decide whether an arbitration agreement exists at all.").

Here, TIR and Ferrell executed the Agreement, which includes the arbitration provision.  SemGroup is not a party to the Agreement.  Thus, no arbitration agreement exists between SemGroup and Ferrell.[2]

---

[2] SemGroup does not argue that it, as TIR's customer, qualifies as a party to the Agreement.  Regardless, such an argument would be unsuccessful as the Agreement is silent as to TIR's customers.  *See* [Doc. 39-1]; *Bock*, 2020 WL 3989646, at *11.

TIR notes that Ferrell does not dispute *the existence* of the arbitration provision, and directs the court to several out-of-Circuit decisions for the proposition that, when a nonsignatory attempts to compel arbitration against a signatory, arbitrability is an issue for the arbitrator.  [Doc. 64, pp. 9-10].[3]  However, this court is bound to apply the decisions of the Tenth Circuit.  The Tenth Circuit has stated that, to determine whether a nonsignatory to an arbitration agreement can compel arbitration of claims against it, the court, not an arbitrator, must look to relevant state law.  *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).

Although TIR and SemGroup contend that *Henry Schein* alters this analysis, for the reasons set forth above, *Henry Schein* did not change the fundamental requirement that the court must first determine whether *the parties* executed an agreement to arbitrate.  *Campbell Invs., LLC*, 784 F. App'x at 630 n.3; *see also Howsam,* 537 U.S. at 83.  Further, TIR and SemGroup cite no Tenth Circuit precedent for the proposition that whether a nonsignatory may compel arbitration constitutes a threshold question for the arbitrator, not the court.  In fact, in *Belnap*, the Tenth Circuit discussed *Contec* (a Second Circuit decision cited by TIR) for the proposition that incorporation of the AAA rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability, but nevertheless applied state law to itself determine whether the nonsignatory could compel arbitration.  *Belnap*, 844 F.3d at 1283-84, 1293 (discussing *Contec Corp.*, 398 F.3d at 1284).  Thus, *Belnap* seemingly rejects TIR and SemGroup's theory.

Finally, the court notes that TIR and SemGroup invoke the doctrine of equitable estoppel, which is discussed in more detail below.  As recently recognized by the Eleventh Circuit,

---

[3] Specifically, TIR cites the following:  *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.,* 866 F.3d 709, 715 (5th Cir. 2017); *Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 211 (2d Cir. 2005).

> [t]hreshold questions of arbitrability can be delegated to an arbitrator by contract. But how does one go about delegating the question of equitable estoppel? By definition, there is no contract, which is, after all, why one of the parties is demanding equitable estoppel. So, if there is no contract, how can the issue of equitable estoppel be delegated in the first place?

*Lavigne v. Herbalife, Ltd*., 967 F.3d 1110, 1120 n.7 (11th Cir. 2020) (internal citations omitted); *see also GNH Grp., Inc., v. Guggenheim Holdings, L.L.C*., No. 19-1932-CFC, 2020 WL 4287358, at \*5 (D. Del. July 27, 2020), *report and recommendation adopted*, (D. Del. Aug. 19, 2020), [Doc. 44] (internal footnote omitted) ("The Court, guided by federal caselaw, cannot conclude that there is clear and unmistakable evidence that these parties (Plaintiff on the one hand, and the Non-Signatory Defendants on the other hand) agreed that an arbitrator should decide arbitrability with respect to Plaintiff's claims against them. How could there be such evidence when Plaintiff and the Non-Signatory Defendants have not signed an agreement with each other containing an arbitration provision with respect to any such claims?"). Thus, as required by *Belnap*, to determine whether TIR and SemGroup can compel Ferrell to arbitrate his FLSA claim against SemGroup, the court turns to Oklahoma law.[4]

### III.    Oklahoma Law Regarding Equitable Estoppel

The U.S. Supreme Court has recognized that "'[t]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]'" *Arthur Andersen LLP*, 556 U.S. at 631 (quoting 21 R. Lord, *Williston on Contracts* § 57.19, p. 183 (4th ed. 2001)). As previously stated, here, both TIR and SemGroup rely on an equitable estoppel theory.

---

[4] There appears to be no disagreement that Oklahoma law governs.

As recognized by other federal courts, Oklahoma law regarding application of equitable estoppel to require arbitration involving a nonsignatory is mixed.  *See Baker v. Cajun Energy Servs. & Rentals, LLC,* No. 19-CV-37-DC, 2020 WL 3579206, at *6 (W.D. Tex. Mar. 24, 2020) (applying Oklahoma law); *Reeves v. Enter. Prods. Partners, LP,* No. 19-CV-570-JED-FHM, 2020 WL 616166, at *4 (N.D. Okla. Feb. 10, 2020), *appeal filed,* No. 20-5020 (10th Cir. Feb. 14, 2020).

The Oklahoma Supreme Court has previously cited a decision of the Second Circuit Court of Appeals identifying five theories for binding nonsignatories to arbitration agreements, including "estoppel, when the claims are integrally related to the contract containing the arbitration clause." *Carter v. Schuster*, 227 P.3d 149, 153 (Okla. 2009) (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n,* 64 F.3d 773, 776-79 (2d Cir. 1995)).  However, the court went on to apply a traditional theory of estoppel.  *Id.* at 153-54.  Under Oklahoma, a traditional theory of equitable estoppel requires proof of five elements:

> (1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment.

*Id.* at 154 (quoting *Burdick v. Indep. Sch. Dist. No. 52 of Okla. Cnty.,* 702 P.2d 48, 54-55 (Okla. 1985)).  In a more recent decision, the Oklahoma Supreme Court again applied a traditional theory of estoppel to determine whether a nonsignatory was estopped from the challenging an arbitration provision.  *See Williams v. TAMKO Bldg. Prods., Inc.,* 451 P.3d 146, 153-54 (Okla. 2019);

Both *Williams* and *Carter* are factually distinguishable and therefore of little utility.  In those cases, unlike here, a signatory sought to enforce an arbitration agreement *against* a nonsignatory. In *Williams*, the defendant sought to enforce an arbitration provision *drafted by the defendant* and printed with the limited warranty on the wrapping of bundles of shingles purchased by homeowner plaintiffs.  *Williams*, 451 P.3d at 150.  The Oklahoma Supreme Court concluded

that the homeowners were not estopped from challenging the arbitration agreement because they did not know of the arbitration provision prior to asserting a claim and, further, homeowners did not "make a false representation to or conceal facts from TAMKO." *Id.* at 154. Likewise, in *Carter*, a signatory to an arbitration provision sought to enforce the provision relative to claims against a nonsignatory. *Carter,* 227 P.3d at 152. However, the court concluded that the arbitration panel failed to make the necessary findings of a false representation to rely on equitable estoppel in making its determination to force arbitration. *Id.* at 154.

In this case, SemGroup, a *nonsignatory* seeks to enforce an arbitration agreement against a signatory. As recognized by U.S. District Judge David Counts of the Western District of Texas, applying Oklahoma law, "[l]anguage in *Carter* suggests that the Oklahoma Supreme Court may be more willing to allow a non-signatory to enforce an arbitration agreement against a signatory because '[u]nder such facts, the nonsignatory is agreeing to arbitrate. The signatory is merely being held to his previous agreement to arbitrate.'" *Baker,* 2020 WL 3579206, at *5 (quoting *Carter,* 227 P.3d at 156).

TIR and SemGroup urge the court to adopt the reasoning of three nonprecedential opinions of the Oklahoma Court of Civil Appeals—*High Sierra Energy, L.P. v. Hull,* 259 P.3d 902 (Okla. Civ. App. 2011), *B.A.P., L.L.P. v. Pearman,* 250 P.3d 332 (Okla. Civ. App. 2011), and *Cinocca v. Orcrist, Inc*., 60 P.3d 1072 (Okla. Civ. App. 2002). *See* [Doc. 39, pp. 12-17; Doc. 64, pp. 10-13]. In those cases, the Court of Civil Appeals applied various theories of equitable estoppel to permit a nonsignatory to enforce an arbitration agreement against a signatory.

In *Cinocca*, plaintiff Tracy A. Cinocca, an attorney, sued defendant Robert Lee Rainey, a law partner in her former employer, and Orcrist, Inc., a computer consulting company retained by the law firm. Cinocca alleged that Orcrist impermissibly accessed her personal computer and

deleted software on Rainey's direction. *Cinocca,* 60 P.3d at 1072-73. Rainey and Orcrist sought to compel arbitration pursuant to a "Separation Agreement" executed by Cinocca and Rainey, on behalf of himself individually and the law firm. *Id.* Cinocca argued that Orcrist could not compel arbitration of the claims against it because it was not a signatory to the agreement. *Id.* at 1074.

The Court of Civil Appeals disagreed and adopted the equitable estoppel theory articulated by the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). *Cinocca*, 60 P.3d at 1074. That theory applies in two circumstances: (1) "where the signatory must rely on the written agreement in asserting its claims against the nonsignatory"; and (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory." *Id.* (citing *MS Dealer Serv. Corp.*, 177 F.3d at 94). The court summarily concluded that Cinocca's claims did not rely on the Separation Agreement and therefore considered only whether Cinocca alleged interdependent and concerted misconduct by Rainey, the signatory, and Orcrist, the nonsignatory. *Id.*

Looking to the allegations of the *Cinocca* Petition, the Court of Civil Appeals noted specific allegations that both "[Orcrist] and Rainey knew they did not have permission to access her computer without her presence" and that "[t]he Unauthorized and Illegal Acts complained of by Plaintiff constitute the basis of this Litigation and were requested and performed at the direction of Rainey without Plaintiff's consent." *Cinocca*, 60 P.3d at 1074-75. The petition further asserted claims for fraud and misrepresentation and deceit, invasion of privacy, conversion, and intentional infliction of emotional distress jointly against Orcrist and Rainey. *Id.* at 1075. Based on those allegations and claims, the court stated "it is clear [plaintiff's] claims against [non-signatory] and [signatory] are 'inherently inseparable.' Where claims against the nonsignatory and the signatory are so 'intertwined', application of equitable estoppel is warranted." *Id.* at 1075.

SemGroup and TIR next direct the court to *High Sierra Energy, L.P.,* 259 P.3d at 908-09. In that case, High Sierra Energy, L.P. had executed a Purchase and Sale Agreement with Kellie Hull, David Hull, and Billy Hare, which included an arbitration provision.  *Id.* at 904.  High Sierra Energy subsequently sued Kellie Hull and other individuals for misappropriation of trade secrets and confidential information, unfair competition, unjust enrichment, misappropriation of assets and property, constructive trust, breach of fiduciary duty, and negligence.  *Id.*   The petition specifically alleged that defendants "wrongfully utilized and/or transferred certain assets, property and proprietary and confidential information belonging to High Sierra" to further competing businesses and that "[d]efendants used the resources of High Sierra, including the Assets, Intangible Property and Personally Held Property . . . purchased by High Sierra under the Purchase Agreement, for their own material benefit."  *Id.* at 904, 907 n.9.  Hull and other individual defendants moved to compel arbitration pursuant to the Purchase and Sale Agreement, although the individual defendants conceded that only Hull was a signatory thereof.  *Id.* at 905.

To determine whether the nonsignatory defendants could compel arbitration, the court noted the "limited circumstances in which a non-signatory to an agreement may compel arbitration, including 'estoppel, when the claims are integrally related to the contract containing the arbitration clause.'"  *Id.* at 908 (quoting *Carter,* 227 P.3d at 153).  The court went on to state, "[t]he Oklahoma Court of Civil Appeals *has applied the theory of equitable estoppel* to allow a non-signatory to compel arbitration against a signatory 'when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory.'"  *High Sierra Energy, L.P.,* 259 P.3d at 908 (emphasis added) (quoting *Cinocca,* 60 P.3d at 1074).  The court further stated:

Following [*MS Dealer*], *Cinocca* defined the circumstances under which equitable estoppel would allow a non-signatory to compel arbitration: "Where claims against

- 12 -

> the nonsignatory and the signatory are so 'intertwined', application of equitable estoppel is warranted.  Otherwise, arbitration proceedings between the signatories 'would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'"  *Cinocca*, ¶ 21, 60 P.3d at 1075 (citing [*MS Dealer*], 177 F.3d at 947).  In recognizing the validity of such situations, the Oklahoma Supreme Court noted:  "Under such facts, the nonsignatory is agreeing to arbitrate.  The signatory is merely being held to his previous agreement to arbitrate."  *Carter*, ¶ 25, 227 P.3d at 156.

*Id.*  As previously stated, *Cinocca* considered only the "interdependent and concerted misconduct" theory of equitable estoppel.  *Cinocca*, 60 P.3d at 1074.  Thus, in *High Sierra,* the Court of Civil Appeals appears to conflate claims "integrally related to the contract" with "allegations of substantially interdependent and concerted misconduct."

Applying its theory of estoppel, the court first concluded that "High Sierra's allegations are 'integrally related' to the PSA," because "[t]he foundation for High Sierra's claims all rest upon the benefits High Sierra expected to receive from the PSA, as well as the alleged premeditated and concerted efforts of [defendants] to deprive High Sierra of the same."  *High Sierra Energy, L.P.,* 259 P.3d at 907-08.  The court further stated that "High Sierra's claims aver 'substantially interdependent and concerted misconduct' by both Kellie Hull and the non-signatory [defendants]" based on the allegations of "contrived efforts" among the signatory and nonsignatory defendants.  *Id.* at 908-09.  Thus, estoppel applied.  *Id.*

Finally, in *B.A.P.*, a nonsignatory sought to enforce an arbitration provision based on principles of either agency *or* estoppel.  *B.A.P., L.L.P.,* 250 P.3d at 337.  In that case, BAP was a limited liability partnership consisting of five partners, including Michael H. Pearman, M.D., P.L.C., an entity owned by Michael H. Pearman, M.D.  *Id.* at 335.  Dr. Pearman was also the president and sole stockholder of Anesthesiologists of Bartlesville, P.C. (AOB), a signatory to the BAP Partnership Agreement.  *Id.*  The Partnership Agreement included an arbitration provision requiring arbitration of disputes among parties to the agreement.  *Id.*  Dr. Pearman signed the

Partnership Agreement on behalf of AOB and was also designated as the agent and representative of BAP. *Id.* BAP subsequently sued AOB and Dr. Pearman in his individual capacity for alleged fraud and abuse of confidence by Dr. Pearman and AOB to acquire BAP funds. *Id.* Dr. Pearman sought to compel arbitration pursuant to the provision included in the BAP Partnership Agreement, but BAP argued that Dr. Pearman could not enforce the clause because he was not a party to the Agreement in his individual capacity. *Id.*

The court first noted that "[m]any courts have permitted a nonsignatory to enforce an arbitration clause when the dispute arises out of or relates to the agreement containing the arbitration clause." *Id.* at 337. The court went on to discuss the Oklahoma Supreme Court's decision, applying New York law, in *Long DeGeer*, 753 P.2d 1327 (Okla. 1987). In *Long*, the court required a nonsignatory to arbitrate pursuant to an agreement that he had not signed in his individual capacity, but had signed as an agent of his principal. *B.A.P., III*, 250 P.3d at 338. The court found *Long* persuasive because it saw "no distinction in Oklahoma agency or arbitration law." *Id.* The court specifically reasoned as follows:

> The parties agree that Dr. Pearman acted as the agent of AOB when he signed the Partnership Agreement containing the arbitration clause. The actions BAP complains of arose out of Dr. Pearman's performance of his duties as the manager and agent of AOB, just as the actions complained of in *Long* arose out of the nonsignatory agent's performance of his duties in relation to the agreement containing the arbitration clause. BAP cannot sue AOB by and through Dr. Pearman, and sue Dr. Pearman in his individual capacity, for actions arising out of duties conferred by the Partnership Agreement to which AOB is a party, and at the same time claim that Dr. Pearman is not entitled to compel arbitration pursuant to the Agreement.

*Id.* Further, the claims against Dr. Pearman were based on his alleged breach of fiduciary duties owed under the Partnership Agreement. *Id.* at 339. Thus, Dr. Pearman could compel arbitration. *Id.* at 340.

- 14 -

#### IV.    Application of Equitable Estoppel to Ferrell's FLSA Claim

Arbitration of Ferrell's FLSA claim in this case is not required under Oklahoma law for two reasons.[5] First, the claim does not bear a sufficient relationship to the Agreement. Second, Ferrell does not allege substantially interdependent and concerted misconduct between SemGroup and TIR.

##### A.    Relation to the Written Agreement

As previously stated, in *Cinocca*, the Oklahoma Court of Civil Appeals cited *MS Dealer* for the proposition that estoppel may apply "where the signatory must rely on the written agreement in asserting its claims against the nonsignatory." *Cinocca,* 60 P.3d at 1074 (citing *MS Dealer Serv. Corp.*, 177 F.3d at 947). In an unpublished decision applying the *MS Dealer* standard, a Tenth Circuit panel stated "[f]or a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; *it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them.*" *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (emphasis added). Although *Lenox* did not interpret Oklahoma law, the court has identified no Oklahoma case law that is contrary to its interpretation of "reliance on the written agreement." *See, e.g., High Sierra Energy, L.P.,* 259 P.3d at 907 (concluding that the claims were "integrally

---

[5] As a general matter, the court also notes that the three Oklahoma Court of Civil Appeals decisions cited by SemGroup and TIR are not precedential, Okla. Sup. Ct. R. 1.200(d)(2), and the Oklahoma Supreme Court has never explicitly adopted the theory of equitable estoppel articulated by *MS Dealer. See Baker,* 2020 WL 3579206, at *4; *Reeves,* 2020 WL 616166, at *4. Rather, as previously stated, the Oklahoma Supreme Court has previously applied a traditional estoppel theory. *Williams*, 451 P.3d at 150; *Carter,* 227 P.3d at 153-54. SemGroup and TIR do not argue that arbitration is required pursuant to a traditional theory of estoppel. Further, the court independently concludes that traditional estoppel is inapplicable to require arbitration under the circumstances because SemGroup offers no proof that Ferrell made a false representation or concealed facts on which SemGroup relied to its detriment. *See Williams,* 451 P.3d at 153-54.

related" to the PSA because "the foundation" of the claims "all rest[ed] upon the benefits" expected from the written agreement); *B.A.P., L.L.P.,* 250 P.3d at 339-40 (applying equitable estoppel when claims were based on the alleged breach of duties owed under the agreement containing the arbitration provision).

Ferrell asserts a statutory FLSA claim against SemGroup as his employer, not a contractual claim based on the Agreement.  Ferrell's FLSA claim requires proof only "(1) that he . . . was a covered employee of the defendant, (2) that the plaintiff worked overtime hours and the defendant did not appropriately compensate the plaintiff for the time worked; and (3) that the plaintiff or the defendant was covered by the FLSA."  *Murphy v. AllStaff Homecare, LLC*, No. 16-CV-2370-WJM-MEH, 2019 WL 4645440, at *3 (D. Colo. Sept. 24, 2019).  Thus, Ferrell's claim relies or rests on statutory rights and duties, rather than contractual rights or duties under the Agreement.

Nor is the Agreement determinative of Ferrell's status as a SemGroup employee.  In the Tenth Circuit, generally,

> [t]o determine whether an individual is an employee under the FLSA, courts apply the six-factor economic realities test, which considers "(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business."

*Acosta v. Jani-King of Okla., Inc*., 905 F.3d 1156, 1160 (10th Cir. 2018) (quoting *Baker v. Flint Eng'g & Constr. Co*., 137 F.3d 1436, 1440 (10th Cir. 1998)).  Although the Tenth Circuit has not articulated a test for joint employers, another court in this district previously applied the *Bonnette* factors:  "whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, or (4) maintained employment records."  *Copeland v. C.A.A.I.R.,*

*Inc.,* No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *3 (N.D. Okla. Sept. 11, 2019).  However, even those factors "are not exhaustive, and the Court must consider the totality of the circumstances when weighing these and any other relevant factors."  *Id.*  Rather,

> joint employment may be found even when an entity does not hire and fire its joint employees, directly dictate their hours, or pay them.  Regardless of the specific factors used, the concept of joint employment should be defined expansively, and the Court must always consider the "economic realities" of the employment relationship in light of all circumstances presented.

*Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1175, 1179 (N.D. Okla. 2006) (internal citations and quotations omitted).  Pursuant to these tests, although the Agreement may be *factually significant* to Ferrell's claim, it is not legally determinative.

SemGroup does not explicitly cite *MS Dealer*'s theory of equitable estoppel premised on *reliance* upon the written agreement, but, instead, urges the court to adopt the reasoning of two other federal courts applying *B.A.P.*  Those courts concluded that, because the plaintiff sought recovery under the FLSA based on work described in the employment agreements containing the arbitration provision, the FLSA claim *arose out of* the written agreement and equitable estoppel applied.  [Doc. 39, p. 18 (citing *Tuggle v. Rockwater Energy Sols., Inc.*, No. H-18-4746, 2019 WL 7040330 (S.D. Tex. Dec. 3, 2019), *report and recommendation adopted by,* 2019 WL 6971660 (S.D. Tex. Dec. 19, 2019); *Judge v. Unigroup, Inc.*, No. 17-CV-201-T-23CPT, 2018 WL 4765234 (M.D. Fla. Aug. 16, 2018))].

In *Tuggle*, individual employee James Tuggle asserted an FLSA overtime claim against Rockwater Energy Solutions, Inc., which had hired Tuggle and other workers through a staffing company, Energy Professionals Group LLC (EPG).  *Tuggle,* 2019 WL 7040330, at *1.  Rockwater moved to compel arbitration of Tuggle's claim pursuant to an Independent Contractor Master Services Agreement (IC-MSA) between Tuggle and EPG, which required Tuggle to arbitrate "any

claim, dispute, or controversy arising out of, or relating to, this agreement, [or] the consulting services." *Id.* at **3-4.  The cover page of the IC-MSA explicitly set forth that Tuggle would be working for Rockwater, and defined the services he would perform, his rate of pay, and his role as an independent contractor.  *Id.* at *4.  Based on these provisions, the court concluded that Tuggle "would have no relationship with Rockwater without the IC-MSA" and "Tuggle's claims against Rockwater thus arise from and relate to the relationship born out of the IC-MSA." *Id.*

Similarly, in *Judge*, an FLSA case, the independent-contractor operating agreements between the plaintiff employees and staffing agencies required arbitration of "[a]ny dispute . . . arising in connection with or relating to [the] agreement*." Judge,* 2018 WL 4765234, at *3. Because the employee's FLSA claims "[arose] out of and relat[ed] to his duties" under the independent-contractor operating agreements, the non-signatory defendant could compel arbitration. *Id.* at *3.

*Tuggle* and *Judge* are unpersuasive for three reasons.  First, based on *B.A.P.*, *Tuggle* and *Judge* broadly concluded that "Oklahoma law . . . allows a non-signatory 'to enforce an arbitration clause when the dispute arises out of or relates to the agreement containing the arbitration clause.'" *Tuggle,* 2019 WL 7040330, at *4; *see also Judge,* 2018 WL 4765234, at *2.  The courts did so without any analysis of the agency principles underlying the *B.A.P.* decision.  No such agency relationship exists in this case.

Second, in *Tuggle* and *Judge*, the courts emphasized the "breadth of the arbitration provisions and the causal link between the contracts and the FLSA claims." *Baker,* 2020 WL 3579206, at *6.  However, based on *Lenox, High Sierra*, and *B.A.P.*, this court is persuaded that the more appropriate focus is on the legal basis of Ferrell's claim, rather than any factual or "but-for" relationship. *See Lenox MacLaren Surgical Corp.*, 449 F. App'x at 709.

Third, the arbitration agreements at issue in *Tuggle* and *Judge* are distinguishable.  Whereas those provisions broadly required arbitration of any claims arising out of, related to, or connected to the contracts themselves, the arbitration provision in this case is limited to claims arising out of or related to "the *parties'* employment relationship or termination of that relationship."  [Doc. 39-1, p. 7 (emphasis added)].  Further, unlike in *Tuggle*, the Employment Agreement did not explicitly set forth that Ferrell would be working for SemGroup or include Ferrell's pay rate.  *Cf. Tuggle*, 2019 WL 7040330, at *4.

For the reasons set forth above, Ferrell's FLSA claim is not sufficiently related to the Agreement containing the arbitration provision.  Thus, the application of equitable estoppel to require arbitration is unwarranted.

## B.    Interdependent and Concerted Misconduct

SemGroup and TIR next contend that Ferrell alleges substantially interdependent and concerted misconduct by the signatory and non-signatory.  [Doc. 39, pp. 12-17; Doc. 64, pp. 13-16].  However, unlike in *Cinnoca* and *High Sierra*, Ferrell asserts no claims against the signatory—TIR.  In fact, Ferrell's Collective Action Complaint is silent as to TIR.  *See generally* [Doc. 2].  In support of allegations of interdependent conduct, SemGroup points to allegations in the Complaint referring to SemGroup's "clients."  [Doc. 39, p. 14 (citing [Doc. 2, ¶¶ 51, 53, 54, 59, 60, 63, 64, 70, and 73-75])].  However, as previously stated, TIR is not explicitly mentioned and therefore the Complaint does not expressly allege any misconduct by TIR.[6]  Nor would such an allegation

---

[6] The court notes that, in *Reeves*, Judge Dowdell implicitly rejected similar allegations as insufficient to assert misconduct against the staffing agency.  *Reeves*, 2020 WL 6161666, at *6; *Reeves v. Enterprise Prods. Partners, LP*, No. 19-CV-570-JED-FHM (N.D. Okla. July 19, 2019), [Doc. 1, ¶ 33 ("Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Enterprise and/or its clients.  Virtually every job function was pre-determined by Enterprise and/or its clients,

implicate TIR, because, as conceded by SemGroup, SemGroup was TIR's client, rather than the reverse. [Doc. 39, p. 10]. Instead, the Class Action Complaint specifically alleges that *SemGroup* controlled Ferrell's hours of work and rates of pay. [Doc. 2, ¶¶ 62, 71-72]. Although SemGroup and TIR contend that Ferrell must *necessarily* rely on a joint employer theory of liability, "[d]efendant has been punching at a ghost. However much it may want to, Defendant is not permitted to select the theory or theories of liability that its litigation adversary must pursue. It is the Plaintiff[], after all, who [is] the master[] of [his] Complaint." *Bock,* 2020 WL 3989646, at *19.

Regardless, SemGroup's liability does not require any imposition of liability upon TIR. Even if TIR and SemGroup constitute joint employers, "the employment relationship test is the same whether there is one putative employer or multiple" and "the test is applied to each putative employer individually." *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 159 (D. Mass. 2019). That is, if SemGroup constitutes an employer, even a joint employer, it would be jointly and severally liable for any overtime wages owed. *See* 29 C.F.R. § 791.2(f).[7]

Nor does TIR's presence as an intervenor in this matter alter the analysis. Ferrell has asserted an FLSA claim against SemGroup, but has not explicitly asserted a claim against TIR. It

---

including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.")].

[7] TIR directs the court to *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2020 WL 1862578 (D. Kan. Apr. 14, 2020) for the proposition that "[a]bsent joint employment, there is no claim against SemGroup." [Doc. 64, p. 14]. However, in that case, the court applied the economic realities test to the totality of the evidence to determine whether an opt-in plaintiff fell within the FLSA collective action definition. The case does not establish a uniform rule with respect to persons engaged by staffing agencies. Additionally, insofar as TIR asserts that this court's June 12, 2020 Opinion and Order, granting TIR's motion to intervene suggests that arbitration is required, the issue in that Order was only whether TIR's interest could be affected by the disposition of this case, which is a relatively liberal standard. *See* [Doc. 63]. The same reasoning does not apply to this equitable estoppel analysis.

is well-established that "one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944).  Although TIR will be involved in this litigation, Ferrell's claim will be litigated only against SemGroup.

Finally, because the Class Action Complaint does not explicitly allege that TIR and SemGroup were joint employers or acted in a concerted manner, the cases from other jurisdictions that SemGroup and TIR cite in support of arbitration are distinguishable.  *Compare* [Doc. 39, pp. 15-17; Doc. 64, p. 15] *with Reeves*, 2020 WL 616166 at *7 (distinguishing case law cited in this case).  For these reasons, the application of equitable estoppel to compel arbitration based on substantially interdependent and concerted misconduct by the signatory and non-signatory is not warranted.

The court recognizes that district courts across the nation are considering similar motions to compel arbitration, and may reach divergent opinions.  Ultimately, however, this court is tasked with determining *these* motions based on the facts of *this* case.  As previously stated, the Oklahoma Supreme Court has not adopted the common law equitable estoppel theory articulated by the Eleventh Circuit in *MS Dealer*.  Even if one reads *Cinocca* and *High Sierra* to predict that the Oklahoma Supreme Court *would* adopt the doctrine when a non-signatory attempts to compel arbitration against a signatory, equitable estoppel is not required under these circumstances because Ferrell neither relies on the Employment Agreement in asserting his FLSA claim nor asserts substantially interdependent and concerted misconduct by both TIR and SemGroup.  *See MS Dealer Serv. Corp.,* 177 F.3d at 947.  Because the court concludes that Oklahoma law does

not require application of equitable estoppel to compel arbitration of Ferrell's FLSA claim in this case, the motions to compel must be denied.[8]

### V.     Conclusion

WHEREFORE, the Motion to Dismiss and Compel Arbitration [Doc. 39] of defendant SemGroup Corporation; the Motion to Compel Arbitration [Doc. 64] of intervenor Cypress Environmental Management-TIR, LLC (TIR); and SemGroup's Response Joining TIR's Motion to Compel Arbitration [Doc. 65] are denied.  The court will enter conditional certification briefing deadlines under separate order.

IT IS SO ORDERED this 9th day of September, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[8] SemGroup also argues that, if Ferrell contends that he is not making a joint employer claim, then the Class Action Complaint must be dismissed for failure to state a claim.  [Doc. 39, pp. 21-22; Doc. 58, p. 2].  It is unclear under what authority SemGroup seeks dismissal.  SemGroup filed an Answer and Amended Answer prior to filing the motion to compel arbitration.  *See* [Doc. 15; Doc. 38].  A motion asserting failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).  SemGroup does not cite Fed. R. Civ. P. 12(c) in its motion.  *See* Fed. R. Civ. P. 12(h)(2).  In fact, in reply, SemGroup indicates that it will, *in the future*, file a Rule 12(c) motion or a motion for summary judgment. [Doc. 58, p. 5].  Regardless, SemGroup's contention in the current briefing would require the court to consider matters outside of the pleadings.  Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The court declines to convert SemGroup's Rule 12 request to a motion for summary judgment and consider matters outside of the pleadings.  Insofar as SemGroup seeks dismissal for failure to state a claim, the motion is denied.